Charles H. **LUNDQUIST**, Appellant,

v.

Joe **TURNER**, Appellee.

No. 22400.

United States Court of Appeals
Ninth Circuit.

Feb. 14, 1969.

See also 9 Cir., 377 F.2d 44.

Robert W. Driscoll (argued), of Hurley & Driscoll, San Marino, Cal., for appellant.

Richard H. Levin (argued), Los Angeles, Cal., for appellee.

Before BARNES, CARTER, and HUFSTEDLER, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Appellant Lundquist appeals from a judgment in favor of Appellee Turner upon Lundquist's counterclaim[1] seeking damages for an alleged violation of the Securities Act of 1933 and of Securities and Exchange Commission Rule 10B-5, 17 C.F.R. 240.10B-5.[2] The District Court found that there was no liability under 10B-5 or the Securities Act of 1933 and rendered judgment without reaching the questions of causation or damages. We affirm the judgment.

The basic facts are not in dispute. In December 1960 Lundquist, Turner, and thirteen other people entered a contract with United States Chemical Milling Corporation ("Chemical") whereby Chemical agreed to sell its convertible notes to the purchasers for stated amounts of cash or cancellation of indebtedness. Among the express conditions to the purchasers' obligations was a provision that the sale be exempt from the registration requirements of the Securities Act of 1933. Each of the purchasers represented and warranted that the notes were being acquired for private, personal investment, with no intention of reselling or otherwise distributing the notes or the common stock into which they were convertible. The purchasers covenanted to indemnify Chemical and hold it harmless for any damage suffered or liability incurred arising out of any inaccuracy in the representations and warranties of the purchasers. The agreement further provided that all covenants on behalf of any of the parties "shall bind and inure to the benefit of the respective legal representatives, successors and assigns of the parties."

The notes were thereafter issued pursuant to a permit of the California Corporations Commissioner. The permit further restricted transfer of the securi-

1. Turner's complaint against Lundquist was dismissed before trial of the counterclaim.

2. Rule 10B-5 provides: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

ties. The notes were issued without registration under the Securities Act of 1933, as amended, in reliance upon the nonpublic offering exemption of 15 U.S.C. § 77d(2).

Lundquist, who was president of Chemical and a member of the board of directors, subscribed to notes in the principal amount of $420,000, payable $120,-000 in cash and $300,000 cancellation of indebtedness. Turner, who was never an officer or board member of Chemical, subscribed to notes for $125,000, payable in cash.

Before Turner signed the debenture agreement he had made a secret arrangement to sell $25,000 of his $125,000 notes to one Roland, an officer of Chemical, for $25,000 cash. He had also agreed to pledge the $125,000 notes to two Oklahoma banks as further security to the banks for lending him $125,000 to buy the notes.

After Turner paid Chemical, he redeemed the pledge. Roland thereafter paid $25,000 cash to Turner, but no part of the notes was ever delivered to Roland, because by the time delivery was to be made Chemical had collapsed and the notes were worthless.

In his counterclaim Lundquist averred that Turner, in the debenture agreement, had misrepresented his investment intent, that that misrepresentation jeopardized the private offering exemption and violated the terms of the California permit, that the S.E.C. and the Corporations Commissioner investigated the issuance and the investigations destroyed Chemical's credit, rendering it insolvent, and that the insolvency rendered worthless Lundquist's debentures.[3]

Lundquist concedes that there is no authority supporting a recovery by one purchaser in a private offering against another purchaser in the same offering for misrepresentation of the other's investment intent. We have no occasion on the facts of this case to decide whether or under what circumstances a remedy for misrepresentation of investment intent should be implied from the materials supplied by Rule 10B–5 or the Securities Act of 1933. It is clear, and the District Court so found, that Turner made no material misrepresentation either to Chemical, the vendor, or to Lundquist. The purpose of Turner's representation of investment intent was to assure that none of the notes would be offered to the public thereby jeopardizing the exempt status of the offering. Turner's prearranged pledge, later redeemed, and sale to Roland, an insider of Chemical, were not intended to and did not in fact cause any of the notes to be offered to the public. (S. E. C. v. Ralston Purina Co. (1953) 346 U.S. 119, 73 S.Ct. 981, 97 L. Ed. 1494; S. E. C. v. Guild Films Co. (2d Cir. 1960) 279 F.2d 485.)

The judgment is affirmed.

3. In his answer to Lundquist's counterclaim, Turner pleaded that the counterclaim did not state a claim for relief.

The District Court did not rule on that contention.